# In the United States Court of Federal Claims

**OFFICE OF SPECIAL MASTERS**
**No. 21-584V**

| | |
|---|---|
| RAHMAN VACE,<br><br>Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND HUMAN SERVICES,<br><br>Respondent. | Chief Special Master Corcoran<br><br>Filed: October 21, 2026 |

*Leah VaSahnja Durant, Law Offices of Leah V. Durant, PLLC, Washington, DC for Petitioner.*

*Katherine Edwards, U.S. Department of Justice, Washington, DC, for Respondent.*

## DECISION[1]

On January 12, 2021, Rahman Vace filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that as a result of an influenza ("flu") vaccine received on August 29, 2020, he suffered the Table injury of a left shoulder injury related to vaccine administration ("SIRVA"). ECF No. 1 at 1 ("Petition"). The case was assigned to the Special Processing Unit ("SPU") of the Office of Special Masters.

For the foregoing reasons, I find that Petitioner has provided insufficient proof of

[1] Because this decision contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

severity of injury, as required for all Vaccine Act claims. I therefore **dismiss** this case.[3]

## I. Procedural History

On March 3, 2022, after several extensions, Petitioner filed four exhibits, a statement of completion, and a motion for ruling on the record. ECF Nos. 14-16. This motion requested that I rule on entitlement based on the record as it then stood because Petitioner did not intend to file any additional evidence, including the statutorily-required affidavit. ECF No. 16 at 1-2. Given that the case had not yet been activated out of Pre-Assignment Review ("PAR"), I deferred ruling on the motion until the PAR process had been completed. ECF No. 17 at 1-2.

On May 31, 2022, I issued an Order to Show Cause why the claim should not be dismissed. ECF No. 18. I explained that the case had now been reviewed for completeness in PAR, and there were substantial deficiencies in the record. *Id.* at 2. First, Petitioner had decided not to file the statutorily-required affidavit. *Id.* Second, Petitioner had not filed sufficient evidence to establish the Act's requirement of six months of post-onset residual effects – the "severity requirement." *Id.* With regard to the second issue, I stated,

> [s]ince Petitioner is alleging a left shoulder injury and has not indicated that he underwent surgery for this injury, I reviewed the medical records for evidence that his shoulder injury persisted for more than six months, i.e., shoulder pain persisting after approximately February 25, 2021. Petitioner's most recent treatment for his left shoulder is October 7, 2020. Ex. 2 at 1407. From October 2020 to March 2021, Petitioner had numerous other medical encounters for issues unrelated to his left shoulder. Ex. 2 at 1423-1609. Thus, it appears Petitioner cannot establish that his left shoulder pain persisted for more than six months.

*Id.* at 2-3.

Petitioner responded to the Show Cause Order on July 29, 2022. ECF No. 20. However, Petitioner's counsel merely represented that she was "unable to move forward with continued prosecution of [P]etitioner's claim without additional input and assistance from [P]etitioner." *Id.* at 2. Petitioner's counsel therefore requested that I "decide the merits of the case based on the limited evidence currently in the record." *Id.* at 3.

[3] Even if severity could be met, there are other Table elements that lack record support – but the Petition can be dismissed on the basis of the failure to meet the severity requirement alone.

Nonetheless, two days later, on August 1, 2022, Petitioner filed a status report indicating that he had contacted his counsel and intended to file additional medical records. ECF No. 21. These records were eventually filed over the next few months. The case was activated to SPU on January 18, 2023. ECF No. 23.

Due to delays in Respondent's medical review, Respondent did not communicate the view that the case was not appropriate for compensation until November 14, 2023. ECF No. 33. Respondent filed a Rule 4(c) Report opposing compensation on January 9, 2024. ECF No. 35 ("Rule 4(c) Report"). Respondent argued that Petitioner had failed to satisfy the statutory severity requirement. Rule 4(c) Report at 10-11. Respondent also asserted that Petitioner's injury did not meet two of the four SIRVA Qualifications and Aids to Interpretation ("QAI"). *Id.* at 6-8.

On October 1, 2024, I entered a scheduling order setting briefing deadlines. Petitioner filed his brief supporting entitlement on December 18, 2024. ECF No. 41 ("Br."). Respondent filed a brief in opposition on January 28, 2025. ECF No. 42 ("Opp."). Petitioner filed a reply on February 26, 2025. ECF No. 44 ("Reply). This matter is ripe for adjudication.

## II. Relevant Evidence

I have reviewed all of the evidence filed to date. I will only summarize or discuss evidence that directly pertains to the determinations herein, as informed by the parties' respective citations to the record and their arguments.

Petitioner was 64 years old at the time of vaccination. Petitioner had a complex medical history, including diagnoses of osteoarthritis of the cervical spine, cervical spinal stenosis, cervical radiculopathy, peripheral neuropathy, chronic right hand pain, carpal tunnel syndrome of the right wrist, and complex regional pain syndrome ("CRPS") of the right upper extremity. Ex. 2 at 235, 273, 508, 613-14, 662, 751, 929. In May 2017, Petitioner was apparently seen by his primary care provider ("PCP"), Riverside Medical Clinic, for left shoulder strain, but did not discuss this problem with his treaters in the time period relevant here. *See id.* at 604. Petitioner also suffered left knee pain due to osteoarthritis and a tear of the medial meniscus, for which he underwent knee surgery on October 9, 2019.

On August 29, 2020, Petitioner received the flu vaccine in his left deltoid at Riverside Medical Clinic. Ex. 1 at 1. A bit more than two weeks later (September 15, 2020), Petitioner was seen by Dr. Jayha Oh at Riverside Medical Clinic for a virtual follow-up appointment regarding his right hand pain and CRPS. *Id.* at 1303. Dr. Oh refilled

Petitioner's long-standing prescriptions for Oxycodone and Naproxen. *Id.* at 1303-05. Petitioner did not report any left shoulder pain at this appointment. *See id.*

The next day (September 16th), Petitioner had another virtual appointment with a different provider at Riverside Medical Clinic, Dr. Margaret Song. *Id.* at 1308. Petitioner reported "[left] shoulder posterior aspect pain for 5-6 days."[4] *Id.* at 1317. Petitioner denied any burning sensation or radiation and pointed to his "posterior shoulder, scapula" as the location of the pain. *Id.* at 1317, 1320. Petitioner did not attribute his pain to the vaccination, but instead mentioned that he had been "doing a lot of work in garage." *Id.* Dr. Song referred Petitioner to physical therapy ("PT"). *Id.* at 1320-21.

On September 21, 2020, Petitioner saw Dr. Song again for an in-person appointment. *Id.* at 1322. Petitioner again reported "left shoulder and arm pain several days after the flu vaccine." *Id.* However, in specifying when the vaccination and the onset of pain occurred, Petitioner incorrectly stated that he had received the flu vaccine on September 12, 2020, and that the pain had started on September 14th. *Id.* at 1335. Petitioner also described the pain as being in the left upper arm and left upper back at scapula "with occasional radiation down lateral arm and dorsal forearm." *Id.* Further, Petitioner noted that he became dizzy when turning his head. *Id.* Dr. Song wrote that it was unclear if Petitioner was having a vaccine reaction and suggested a possible nerve injury or shingles. *Id.* at 1339.

Petitioner also had his initial PT evaluation on September 21, 2020. Ex. 3 at 3. He now made the slightly different report that he had experienced acute left shoulder pain "since Sept[ember] 11/12 after receiving flu shot." *Id.* Petitioner complained of pain in his left shoulder, peri-scapular area, and upper arm. *Id.* Petitioner returned for another PT appointment on September 22, 2020, and reported no changes. *Id.* Petitioner did not have any further PT sessions, although he was recommended for PT once per week for six weeks. *See id.* at 4.

On September 28, 2020, Petitioner returned to Riverside Medical Clinic and was seen by Dr. Nardo Buena. Ex. 2 at 1358. Again, Petitioner incorrectly stated that he had received the flu vaccine on September 12, 2020 and that the onset of his pain was the following day. *Id.* at 1372. Petitioner located the pain in his left upper arm without radiation, but Dr. Buena also noted that "[o]ver the last few days he is also complaining of pain on the left upper back near the scapula." *Id.* Petitioner received a trigger point injection in his left parascapular area. *Id.* at 1376-77.

---

[4] On the same page, the onset of this pain was listed as four to five days. *See* Ex. 2 at 1317.

The next day, Petitioner had a video appointment with Dr. Song. Ex. 2 at 1389. Whereas Petitioner told Dr. Buena that the pain did not radiate, he complained to Dr. Song of radiating pain down to his dorsal forearm. *Compare id.* at 1377 with *id.* at 1389. As to onset, Petitioner stated that his pain began “after” getting a flu vaccine. *Id.* Dr. Song found the etiology of his problem to be unclear and suggested that he “may have more than one cause of his pains.” *Id.* at 1389, 1393. Dr. Song also found the radiating pain concerning for trauma to a peripheral nerve branch causing mononeuritis. *Id.* at 1393. Petitioner requested a referral to a neurologist. *Id.* at 1377.

Only four days later, on October 3, 2020, Petitioner went to the Emergency Department (“ED”) complaining of left shoulder pain. Ex. 4 at 5-9. One of the treating physicians wrote that Petitioner “reports having an injection two weeks prior in left deltoid with pain intermittent since around site.” *Id.* at 9. In another section of this record, the onset of Petitioner’s pain was stated to have been three weeks prior. *See id.* at 5, 6, 8-9. Petitioner again did not give the correct date of his vaccination.

Petitioner had a virtual appointment with Dr. Song on October 7, 2020 regarding “left shoulder pain x3 weeks.” Ex. 2 at 1407. Petitioner complained that his pain radiated down his left upper arm to his forearm, but not to his hand.” *Id.* Dr. Song stated that it was “[u]nclear if he has shoulder pathology” and ordered an MRI and x-ray of Petitioner’s left shoulder and imaging of his cervical spine. *Id.* at 1411. Dr. Song also referred Petitioner to a neurologist for a nerve conduction study. *Id.* But Petitioner’s records do not contain any reference to any further imaging or treatment of left shoulder pain.

The remainder of Petitioner’s medical records addressed the following appointments and issues:

- A cardiologist appointment on October 15, 2020, regarding peripheral artery insufficiency in his lower extremities. *Id.* at 1423;

- A PCP appointment on October 23, 2020, for a sore throat and possible COVID-19. *Id.* at 1430;

- A PCP appointment on November 16, 2020, to follow-up on back and knee pain. *Id.* at 1455;

- A cardiologist appointment on December 3, 2020, regarding chronic venous insufficiency. *Id.* at 1468;

- A PCP appointment on December 9, 2020, regarding osteoarthritis of the right knee. *Id.* at 1487;

- A PCP appointment with Dr. Song on January 6, 2021, to follow up on laboratory results. *Id.* at 1503. Of note, Petitioner asked Dr. Song whether the pneumococcal conjugate vaccine "can cause the same kind of [left] arm reaction that the flu shot did." *Id.* at 1504;

- A PCP appointment on January 11, 2021, to follow-up on left knee pain. *Id.* at 1521. Petitioner received a left knee steroid injection. *Id.* at 1522;

- An encounter with his PCP on February 9, 2021, for COVID-19 vaccination. *Id.* at 1533;

- A PCP appointment on February 13, 2021, regarding fever and sore throat. *Id.* at 1546;

- A PCP appointment with Dr. Song on February 18, 2021. *Id.* at 1563. Petitioner questioned whether he should receive the second dose of the COVID-1 vaccine due to having had a high fever following the first dose. *Id.;*

- A PCP appointment with Dr. Song on March 4, 2021, regarding headache and episodes of hot flashes and night sweats. *Id.* at 1578;

- A PCP appointment on March 5, 2021, for a hyaluronate injection of the left knee. *Id.* at 1594, 1598. The musculoskeletal examination listed tenderness in the left knee, limited neck and lumbar range of motion, and limited movement of the right hand fingers with some muscle atrophy and tenderness. *Id.* at 1597; and

- A PCP appointment with Dr. Song on March 18, 2021, regarding complaints of hot flashes, fatigue, and headache, which Petitioner attributed to the second dose of the COVID-19 vaccine. *Id.* at 1609.

There is thus no evidence of any additional shoulder treatment from early October 2020 to the spring of 2021 – a span of five months – and despite numerous instances in which the Petitioner pursued medical care.

On August 31, 2022, Petitioner filed updated medical records. Petitioner had a virtual pain management appointment with Dr. Oh at Riverside Medical Clinic on August

22, 2022. Ex. 8 at 1. Dr. Oh discussed his chronic right hand pain and cervical stenosis and refilled his prescriptions for Oxycodone and Naproxen. *Id.* at 6. Petitioner had a similar appointment on November 21, 2022. Ex. 9 at 1.

On January 17, 2023, Petitioner filed a declaration. Ex. 10 at 1. Petitioner's testimony is not consistent with the above-described medical records. Notably, Petitioner asserts that on August 29, 2020, he "had to go to emergency room, urgent care and pain [m]anagement." *Id.* Because it was flu season, Petitioner went to Riverside Medical Clinic for the vaccination and "within a few hours after getting the vaccine shot had severe pain in his shoulder and arm." *Id.* However, there is no evidence that Petitioner went to the emergency department or urgent care on that date, whether due to pain in his left shoulder following the vaccination, or for any other reason.

Petitioner states that he believed the pain would be temporary and would go away after a few days, but instead his arm became "paralyzed" with severe pain that prevented him from driving or performing daily activities. Ex. 10 at 1. At this point, Petitioner claims that he could not move or lift his arm and called Dr. Song, who recommended that he go to the emergency room. *Id.* This recollection does not comport with the timeline of Petitioner's actual appointments. By the time Petitioner went to the ED on October 3, 2020, he had already seen Dr. Song, other physicians at Riverside Medical Clinic, and a physical therapist.

According to Petitioner, after going to the emergency room, he still felt disabled by constant pain and being unable to move his shoulder, but Dr. Song was "booked for a month." Ex. 10 at 1. He then decided to go to Riverside Medical Clinic urgent care, where he saw Dr. Buena. *Id.* Petitioner asserts that Dr. Buena prescribed him pain medication and Naproxen. *Id.* Again, Petitioner's medical records demonstrate that he had seen Dr. Song twice before he saw Dr. Buena for the first time on September 28, 2020. Additionally, to the extent that Petitioner suggests that his left shoulder pain required him to use opioid pain medication and Naproxen, he had already been prescribed these medications for his other chronic conditions well before he received the flu vaccine. *See id.* at 1-2.

Finally, Petitioner states that he had a "few hours of therapy and massage," purchased "stimulation devices," and used Diclofenac gel. Ex. 10 at 2. These treatments are not referenced in any of the medical records. Petitioner also did not submit proof of these purchases or for massage therapy.

## Analysis

To receive compensation under the Vaccine Program, a petitioner must prove either (1) that he suffered an injury falling within the Vaccine Injury Table, or (2) that he suffered an injury that was actually caused by his vaccine. *See* Sections 13(a)(1)(A) and 11(c)(1). In either case, however, a petitioner must demonstrate that the injured person has "suffered the residual effects or complications of his illness, disability, injury, or condition for more than six months after the administration of the vaccine."[5] Section 11(c)(1)(D)(i). Petitions may appropriately be dismissed for failure to substantiate the Vaccine Act's severity requirement. *See, e.g.*, *Hinnefeld v. Sec'y of Health & Hum. Servs*., No. 11-328V, 2012 WL 1608839, at *4–5 (Fed. Cl. Spec. Mstr. Mar. 30, 2012) (dismissing case where medical history revealed that petitioner's Guillain-Barré Syndrome resolved less than two months after onset).

The petitioner carries the burden of establishing the matters required in the petition, including the severity requirement, by a preponderance of the evidence. Section 13(a)(1)(A); *see Song v. Sec'y of Health & Hum. Servs.*, 31 Fed. Cl. 61, 65-66 (1994), *aff'd*, 41 F.3d 1520 (Fed. Cir. 2014). Congress has stated that the severity requirement was designed "to limit the availability of the compensation system to those individuals who are seriously injured from taking a vaccine." H.R. REP. 100-391(I), at 699 (1987), reprinted in 1987 U.S.C.C.A.N. 2313–1, 2313–373, cited in *Cloer v. Sec'y of Health & Hum. Servs.*, 654 F.3d 1322, 1335 (Fed. Cir. 2011), *cert. denied,* 132 S.Ct. 1908 (2012); *Wright v. Sec'y of Health & Hum. Servs.*, 22 F.4th 999, 1002 (Fed. Cir. 2022).

In this case, to meet the statutory six-month severity requirement, Petitioner must preponderantly demonstrate that he suffered the "residual effects or complications" of his claimed injury beyond March 1, 2021. *See* Section 11(c)(1)(D)(i). Respondent's challenge centers on Petitioner's lack of *any* reports of left shoulder pain or treatment after October 7, 2020, only 39 days post-vaccination.[6] Rule 4(c) Report at 10-11; Opp. at 11-12. On this record, Petitioner has not proven severity by a preponderance of the evidence.

It weighs heavily against Petitioner that despite having frequent appointments during remainder of the six month period and beyond, including for pain in other parts of

[5] Petitioner does not allege, nor would the evidence support, either alternative for establishing the severity requirement: that the alleged injury resulted in death, or "inpatient hospitalization and surgical intervention." Section 11(c)(1)(D)(ii), (iii).

[6] Further, as Respondent argues, if the onset of Petitioner's pain occurred between September 10-14, 2020, then the period for which Petitioner experienced left shoulder pain would be even shorter than 39 days. *See* Rule 4(c) Report at 10.

his body, he entirely ceased to complain of left shoulder pain after the October 7, 2020 appointment. Of course, the Vaccine Act does not require a petitioner to obtain formal treatment for his injury for the entire time period. *See* Reply at 3. But here, given the brief period in which he reported left shoulder pain and the lack of any follow-up, Petitioner's contemporaneous medical records do not support a finding that he suffered even residual pain beyond October 7, 2020.[7]

I do not find persuasive Petitioner's attempt to glean evidence of left shoulder pain as an ongoing reported problem from formulaic and likely automatically-generated data in his medical records. Petitioner relies on appointment notes from March 4, 2021, March 5, 2021, and March 18, 2021, that list left shoulder pain on the "Problem List" with dates of "9/16/2020 – Present." *See* Ex. 2 at 1571, 1586, 1602. However, I do not give the "Problem List" much weight because it denoted a large number of conditions for which Petitioner was not receiving active treatment in 2020-21 as continuing to the present. *See id.* Indeed, Petitioner's earlier left shoulder strain was still listed as unresolved with dates of "5/17/2017 – Present." *See id.* at 1570, 1585, 1601. Further, this list was also generally duplicative and inconsistent – for example, right hand pain and left knee pain were noted to be resolved, yet they were also listed as ongoing problems under slightly different diagnostic codes. *See id.* at 1568-69, 1583-84, 1599-1600.

As a last resort, Petitioner relies on his declaration to support severity. *See* Reply at 3-4. Petitioner argues that his testimony is "[e]qually important as the medical records." *Id.* Petitioner asserts that in *James-Cornelius v. Secretary of Health & Human Services*, 984 F.3d 1374 (Fed. Cir. 2021), the Federal Circuit held that "affidavits may well provide the best evidence available to prove such things as an injury's severity and duration." Reply at 3-4. However, I recently rejected a similar argument, noting that *James-Cornelius* only addressed whether a petitioner had a reasonable basis for bringing her claim in the context of the denial of a motion for attorney's fees. *See Chiago v. Sec'y of Health & Hum. Servs.*, No. 21-727V, 2025 WL 2603023, at *7 (Fed. Cl. Spec. Mstr. July 7, 2025). "The Federal Circuit did not allow a petitioner to establish *entitlement* using only her own statement." *Id.* (emphasis in original).

I do not disregard the declaration, but it is not in any way consistent with the medical records. *See* Reply at 4. Petitioner's declaration does not come close to explaining the cessation of treatment and short period of left shoulder complaints. At base, without an adequate foundation in the medical records, the Vaccine Act prevents

---

[7] At best, Petitioner asked whether the pneumococcal vaccine could cause "the same kind of [left] arm reaction that the flu shot did" on January 6, 2021. Ex. 2 at 1504. This wording suggests a resolved problem, and was, in any event, still within the six month window.

me from finding a petitioner entitled to compensation based upon the petitioner's claims alone. *See* Section 13(a).

**Conclusion**

Petitioner has presented insufficient proof to establish the six-month severity requirement. Section 11(c)(1)(D). Petitioner is thus ineligible for compensation. In the absence of a timely-filed motion for review (see Appendix B to the Rules of the Court), the Clerk shall enter judgment in accordance with this Decision.[8]

**IT IS SO ORDERED.**

**s/Brian H. Corcoran**
Brian H. Corcoran
Chief Special Master

[8] Pursuant to Vaccine Rule 11(a), the parties may expedite entry of judgment by filing a joint notice renouncing their right to seek review.